IN THE UNITED STATES DISTRICT FOR
THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DUCKHEE LEE, IRENE LEE, and ADRIAN LEE, individually and on behalf of the Estate of JUNGSOON LEE<br><br>Plaintiffs<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant | § § § § § § § § § § § § § § § § | No. 5:18-cv-00088-FB |

## PLAINTIFFS' RESPONSE TO GOVERNMENT'S MOTION TO DISMISS

The United States Army sent Sgt. Andrew Mellick on a 5-month special training mission in Arizona. On October 6, 2016, he drove—on orders—from his special training mission to his regular duty station. He fell asleep and killed Jungsoon Lee and severely injured Duckhee Lee. The issue here is whether Sgt. Mellick was within the scope of his employment. The Court should deny the Government's motion because:

- The Government's motion is a premature summary judgment motion without the benefit of discovery;

- Texas law scopes Sgt. Mellick because he was driving to and from an out-of-state special mission; and

- Sgt. Mellick was on specific orders to finish training and return to base on the day of the car wreck.

1

## I.   The Court should treat the Government's motion as a premature summary judgment motion.

The Government's motion is an early motion for summary judgment and should be denied until adequate discovery can take place. In *Montez v. Dep't of Navy*, the Government moved to dismiss under Rule 12(b)(1), arguing a service member was not acting within the course and scope of his employment. 392 F.3d 147, 148 (5th Cir. 2004). The Fifth Circuit held that the Government's motion should be treated as either a Rule 12(b)(6) or Rule 56 motion. *Id.* at 150–51. The court reasoned "where issues of fact are central both to subject matter jurisdiction and the claim on the merits, we have held that the trial court must assume jurisdiction and proceed to the merits." *Id.* at 150.

A complaint will survive a Rule 12(b)(6) motion if the pleading, accepted as true, states a claim for relief that is plausible on its face. *Wilson v. Brinberg*, 667 F.3d 591, 595 (5th Cir. 2012). There is factual plausibility when the Plaintiff's pleading allows the court to draw a reasonable inference of the Government's liability. *Id.* If matters outside the pleading are presented to, and not excluded by the court, the motion shall be treated as a summary judgment motion. Fed. R. Civ. P. 12(d). If the court converts the motion, parties must be given a reasonable opportunity to conduct discovery. *Id.*; *Sahu v. Union Carbide Crop.*, 548 F.3d 59, 70 (2d Cir. 2008).

The Court may exclude the Government's attachments and look only at the Complaint. Here, Plaintiffs meet the Rule 12(b)(6) standard. Plaintiffs' complaint alleges that Sgt. Mellick was an employee of the United States acting within the scope of his employment. Plaintiffs' Original Complaint ¶ 1.10. Sgt. Mellick's immediate employer is an agency of the United States. *Id.* ¶ 1.9.

The Complaint alleges sufficient facts to support these claims. Sgt. Mellick had completed training in Arizona for the military. *Id.* ¶ 1.16. Sgt. Mellick was dressed in military uniform and under orders to return to Fort Sam Houston, Texas. *Id.* ¶ 1.15. Sgt. Mellick was returning from training at the direction of his employer. *Id.* ¶ 1.16. Sgt. Mellick was on Temporary Duty Status (TDY), with specific authorization to use his vehicle. *Id.* Sgt. Mellick was driving to fulfill orders of his superiors and he was taking the most direct route. *Id.*

Sgt. Mellick and his superior's post-wreck conduct allows a reasonable inference to be drawn that all believed he was acting within the scope of his employment. Immediately after the car wreck, Sgt. Mellick made a phone call. *Id.* ¶ 1.21. Uniformed military personnel arrived and discussed the situation with Sgt. Mellick. *Id.* At the time of the wreck, Sgt. Mellick was subject to military law and the Uniform Code of Military Justice. *Id.* ¶ 1.22. Finally, after the wreck, the military assumed full responsibility for the investigation and court martial of Sgt. Mellick. *Id.* ¶ 1.22.

II. **Under Texas law, an employee traveling to-and-from training or duty stations does so in furtherance of employment objectives.**

Here, the Government concedes that Sgt. Mellick is its employee. The only question is whether Sgt. Mellick was acting within the scope of that employment. Per Texas law, "[a]n employee is acting in the scope of his employment if he is acting in the furtherance of the business of his employer." Tex. Pattern Jury Charge, General Negligence § 10.6 (2016) (Exhibit 1 to this Response).

And Texas law states that the travel of an employee on a "special mission" is scoped. *Chevron U.S.A., Inc. v. Lee*, 847 S.W.2d 354, 355–56 (Tex. App.—El Paso 1993, no writ). So, Texas courts have held that an employee driving to a mandatory out-of-city seminar was within the scope of employment. *Id.* at 356. If the drive to the mandatory seminar is scoped, so must the drive back. *Aguirre v. Vasquez*, 225 S.W.3d 744, 751 (Tex. App.—Houston [14th Dist.] 2007, no pet. h.). In *Aguirre*, employees making a return trip from an out-of-state job were scoped. *Id.*

### A. The Texas Supreme Court just released an opinion on point reversing a case relied on by the Government

In *Painter*, the Texas Supreme Court held that an employee driving a personal vehicle from an employer's worksite to a bunkhouse paid for by the employer was within the course and scope. *Painter v. Amerimex Drilling I, Ltd.*, No. 16-0120, at 2 (Tex. April 13, 2018) (attached as Exhibit 2). An employee "driving back to the bunkhouse after a shift" is scoped when that drive is a part of the employee's special mission. *Id.* at 18–19.

Notably, the Texas Supreme Court held that an employer's control over the employee's conduct *is not relevant* to the question of course and scope. *Id.* at 9. The court held that "control over the details of his driving, such as prescribing a route or requiring a particular means of transportation" does not matter. *See id.* at 10. Instead, an employee is scoped if he is on a special mission. *Id.* at 15–16 (citing *Chevron USA* favorably).

In contrast, the Government relies on cases where the employee deviates from the mission. *E.g.*, *Pinkus v. Hartford Cas. Ins. Co.*, 487 S.W.3d 616, 623–24 (Tex. App.—Dallas 2015, pet. denied) (worker's compensation case). If the Government is arguing Sgt.

4

Mellick deviated from his orders to return to base in Texas, it has failed to show how. But the Government really stretches the limits of legal analogy by comparing Sgt. Mellick's 5-month training mission to an employee grabbing lunch. *E.g.*, Government's Motion, at 8-9, 10 (citing four cases of employees getting lunch, and at least one case of dinner).

### B.   *Texas law abounds with examples of out-of-town employee travel that falls within the scope of employment.*

*Hallberg v. Hilburn* addresses the very factual scenario at issue here. The Fifth Circuit noted that an employee traveling back from a special mission would be scoped:

> Here, however, Hilburn chose to come to El Paso several days early to secure a home for his family and left Mississippi in time to do so. **If the collision had occurred on a highway between Mississippi and El Paso, clearly, … the United States would have been liable**.

434 F.2d 90, 92 (5th Cir. 1970) (internal citations excluded, emphasis added). The court concludes a service member was an employee where he was on orders to report to duty, was offered travel pay, and dressed in uniform. *Id.* at 93. Likewise, the Fifth Circuit, in *United States v. Culp*, scoped a service member on orders for a permanent change of station with a travel allowance for private conveyance. 346 F.2d 35, 36 (5th Cir. 1965).

And as another example, take *Best Steel Bldgs., Inc. v. Hardin*, 553 S.W.2d 122, 128 (Tex. App.—Tyler 1977, writ ref'd n.r.e.). There, an employee was sent to Houston for a job. *Id.* After his job finished, he spent the night with his daughter and drove back to Austin the next morning. *Id.* at 128–29. When an accident occurred on the return trip, the court held the employee was scoped. *Id.*

Next, there is the case of the employee who travels at night "for his personal convenience—to avoid the necessity of getting up early the next day to make the trip."

*Dictaphone Corp. v. Torrealba*, 520 S.W.2d 869, 872 (Tex. App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.). The court held "an employee's arrangement of the performance of his duties in a manner consistent with his personal convenience does not take him out of the scope of his employment." *Id*.

In sum, the overwhelming weight of Texas authority scopes an employee returning from a special mission at the employer's request.[1] Federal courts across the country reach similar results.[2]

---

[1] *E.g.*, *Freeman v. Tex. Comp. Ins. Co.*, 603 S.W.2d 186, 192 (Tex. 1980) (employee scoped when leaving from a polygraph test taken at the employer's request); *Harris County v. McCoy*, 804 S.W.2d 523, 524–25 (Tex. App.—Houston [1st Dist.] 1990, writ dism'd w.o.j.) (employee scoped when returning from a firearms training session); *Josey-Miller Co. v. Sheppard*, 357 S.W.2d 488, 489 (Tex. App.—Beaumont 1962, no writ. h.) (truck driver was scoped on a return trip, even when not taking the most direct route).

[2] *E.g.*, *Buchanan v. United States*, 102 F. Supp. 3d 935, 938–39, 941–42 (W.D. Ky. 2015) (Army soldier scoped when involved in car wreck, while on temporary duty assignment and on return trip from training, in a rental car paid for by the soldier.); *St. Paul Guardan Ins. Co. v. United States*, 117 F. Supp. 2d 1349, 1352, 1355 (S.D. Fla. 2000) (Navy reservist scoped when involved in wreck en route to duty station the day before he was due.); *Purcell v. United States*, 130 F. Supp. 882 (N.D. Cal. 1955) (an officer who was ordered to proceed from his post in another city to attend a two-day staff meeting using his own car was held to be within the scope); *McCluggage v. United States*, 392 F.2d 395, 396–97 (6th Cir. 1968) (Airman traveling on temporary duty assignment, authorized to leave early due to weather, found to be scoped.); *Wollman v. Gross*, 637 F.2d 544 (8th Cir. 1980) (a federal employee, authorized to use his own vehicle on official business, was involved in a wreck on a return trip home, was held to be within the scope of employment); *Proietti v. Civiletti*, 603 F.2d 88, 89 (9th Cir. 1979) (a service member, although not authorized to use his personal vehicle, was found to be within scope when he used it for his official duties); *Prince v. Creel*, 358 F. Supp. 234, 236–37 (E.D. Tenn. 1972) (Employee, for convenience and personal reasons, leaves a day prior to authorized travel order and found to be scoped).

### III. Evidence outside the pleadings proves Sgt. Mellick's drive back to base was pursuant to specific orders and in furtherance of his employment objectives in the military.

Sgt. Mellick was on the road on October 6 *because of* the 5-month training course and *would not* have been on the road but-for that course.[3] As a matter of fact, Department of Defense TDY travel regulations specify that a service member's status does not end until the traveler "returns to his [permanent duty station], residence, or office." Exhibit 3, Joint Travel Regulations Excerpts, at 1-3.[4] Similarly, Army policy specifically confers duty status in reference to the return trip. Exhibit 4, Army Policy Letter #2-1 (May 20, 2016).[5] Multiple subsequent Government employees confirm that Sgt. Mellick was under specific orders to return on October 6. Exhibit 5, Alsaffar Declaration. And the Government's attached evidence proves this point too. *See* ECF Document #7-4 (Change of Orders).

The question of scope turns on whether Sgt. Mellick was acting in furtherance of his employer's business. Sgt. Mellick's October 6th orders specified that travel was in furtherance of his employer's objectives:

> **Justification**: This "no cost" change to the POI would eliminate unnecessary weekend TDY expenditures, while executing training and

---

[3] Where a trip has both a personal and business purpose, the business purpose must be both the necessary and sufficient cause of the travel. *Leordeanu v. Am. Prot. Ins. Co.*, 330 S.W.3d 239, 243 (Tex. 2010); *Gilgon, Inc. v. Hart*, 893 S.W.2d 562, 568 (Tex. App.—Corpus Christi 1994, writ denied) (the burden is on the employer to disprove).

[4] The full policy is available at http://www.defensetravel.dod.mil/Docs/perdiem/JTR.pdf (last visited April 16, 2019).

[5] *Available at* https://www.army.mil/e2/c/downloads/435690.pdf (last retrieved April 16, 2018).

assessment of all resident tasks on the approved 35L and 35E Critical Task Lists.[6]

Since the Government ended his training early, Sgt. Mellick's housing, meals, and per-diem also ended early. Sgt. Mellick was entitled to mileage reimbursement for his return trip.[7] So, Sgt. Mellick's only option both practically and under orders was to return to base in Texas on October 6, 2018. If the Army had ordered Sgt. Mellick to stay in Arizona until October 7, allowing him to rest, this wreck would not have occurred—but that would have cost the Army more.

Moreover, the Government does not dispute that Sgt. Mellick traveled to Arizona for ordered training. To get to and from this training furthers the Government's business of educating its employees. There's no evidence that on the trip back from this training, Sgt. Mellick deviated or took anything other than the most direct route. And that Sgt. Mellick used his personal vehicle is not dispositive. *See Kennedy v. Am. Nat. Ins. Co.*, 107 S.W.2d 364, 366 (Tex. 1937); *Smith v. Universal Elec. Constr. Co.*, 30 S.W.3d 435, 438 (Tex. App.—Tyler 2000, no pet. h.).

The Government's discussion of the authorized airline flight back raises more fact questions than it answers. Is the Government's position that Sgt. Mellick took his private vehicle to Arizona with the intent to abandon it there and fly back to Fort Sam Houston? Instead, Sgt. Mellick followed the Government's mandate that, "[t]raveling responsibly includes using the least expensive transportation mode…" Exhibit 3, Joint Travel

---

[6] Government's Motion to Dismiss, at Ex. 4 (W.D. Tex. Apr. 2, 2018) (ECF Doc. #7-4)

[7] Exhibit 4, Dep't of Army, Policy Letter #2-1: Temporary Duty (TDY) Travel, at pg. 3 (May 20, 2016), *available at* https://www.army.mil/e2/c/downloads/435690.pdf.

Regulations, at 1-1. And even if a TDY traveler does not use authorized transportation, the traveler is still reimbursed for the transportation mode actually used, up to the pre-authorized amount. *Id.* at 2-2. Regardless, *Painter* makes the Government's "authorized mode travel" argument irrelevant on the question of scope. *Painter*, No. 16-0120, at 9–10.

## REQUEST

The Court should deny the Government's motion and hold that Sgt. Andrew Mellick's conduct was within the scope of his employment with the United States Department of Army on October 6, 2016. Alternatively, the Court should deny this motion as premature and allow discovery to take place.

Respectfully Submitted,

/s/ Tom Jacob
JAMAL K. ALSAFFAR
jalsaffar@nationaltriallaw.com
Texas State Bar #24027193
TOM JACOB
tjacob@nationaltriallaw.com
Texas State Bar #24069981
Whitehurst, Harkness, Brees, Cheng,
Alsaffar, Higginbotham, & Jacob PLLC
7500 Rialto Blvd, Bldg Two, Ste 250
Austin, TX 78735
(512) 476-4346 (o)
(512) 467-4400 (f)

GUY CHOATE
gdchoate@webbstokessparks.com
Texas State Bar #04212410
Webb, Stokes & Sparks, L.L.P.
314 W Harris Ave
San Angelo, TX 76903-6339
(325) 718-2048 (o)

## CERTIFICATE OF SERVICE

By my signature above, I certify that a copy of this pleading has been sent to the following on April 16, 2018 via the Court's CM/ECF notice system.

>CLAYTON R. DIEDRICHS
>Assistant U.S. Attorney
>Clayton.Diedrichs@usdoj.gov
>ERICA BENITES GIESE
>Assistant United States Attorney State
>U.S. Attorney's Office
>Erica.Giese@usdoj.gov
>601 N.W. Loop 410, Suite 600
>San Antonio, TX 78216-5597
>
>ATTORNEYS FOR DEFENDANT