IN THE UNITED STATES DISTRICT FOR
THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DUCKHEE LEE, IRENE LEE, and ADRIAN LEE, individually and on behalf of the Estate of JUNGSOON LEE<br><br>Plaintiffs<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant | § § § § § § § § § § § § § § § | No. 5:18-cv-00088 |

**FIRST AMENDED ORIGINAL COMPLAINT**

Plaintiffs DUCKHEE LEE, IRENE LEE, ADRIAN LEE, individually and on behalf of the Estate of JUNGSOON LEE, bring this complaint under the Federal Tort Claims Act, 28 U.S.C. § 2674. Plaintiffs complain of the United States of America and would show the following:

**PARTIES**

1.1. This case arises out of bodily injuries caused by a United States Army employee, when he fell asleep at the wheel and rear-ended Plaintiff's car.

1.2. Plaintiffs are DUCKHEE LEE and the Estate of JUNGSOON LEE, deceased, and their children, ADRIAN LEE and IRENE LEE. Plaintiffs reside in Pittsburg, California.

1

1.3.     Defendant is the United States of America. Sgt. Andrew Mellick, at all times relevant to this lawsuit, was an active duty employee of the United States Department of Army, an agency of the United States of America.

## JURISDICTION, SERVICE, & VENUE

2.1.     This Federal District Court has jurisdiction because this action is brought pursuant to and in compliance with 28 U.S.C. §§ 1346(b), 2671–2680, commonly known as the Federal Tort Claims Act.

2.2.     The United States of America may be served with process in accordance with Rule 4(i) of the Federal Rules of Civil Procedure by serving a copy of the Summons and Complaint on the United States Attorney John F. Bash, United States Attorney for the Western District of Texas by certified mail, return receipt requested at his office:

> United States Attorney's Office
> ATTN: Civil Process Clerk
> 601 NW Loop 410, Suite 600
> San Antonio, Texas 78216

2.3.     Service is also affected by serving a copy of the Summons and Complaint on William Barr, Attorney General of the United States, by certified mail, return receipt requested at:

> The Attorney General's Office
> ATTN: Civil Process Clerk
> 950 Pennsylvania Avenue, NW
> Washington, DC 20530-0001

2.4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) because the United States is the Defendant, and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## LIABILITY OF THE UNITED STATES

3.1. This case is commenced and prosecuted against the United States of America to and in compliance with Title 28 U.S.C. §§ 2671–2680, the Federal Tort Claims Act. Liability of the United States is predicated specifically on 28 U.S.C. § 2674 because the personal injuries and resulting damages of which the complaint is made were proximately caused by the negligence, wrongful acts and/or omissions of employees and/or agents of the United States of America working for the United States Department of the Army, while acting within the scope of their office, employment, and/or agency under circumstances where the United States of America, if a private person, would be liable to the Plaintiffs in the same manner and to the same extent as a private individual.

3.2. The United States Department of Army is an agency of the United States of America. The Defendant United States of America, through its agency, the United States Department of Army, at all material times owned, operated, and controlled Fort Sam Houston, Texas and staffed its facilities and vehicles with its agents, servants and employees.

3.3. At all material times, Sgt. Andrew Mellick and all persons involved in training and supervising Sgt. Mellick were agents, servants, or employees of the

United States of America or its agency, and were at all material times acting within the course and scope of their employment.

## JURISDICTIONAL PREREQUISITES

4.1.	Pursuant to 28 U.S.C. §§ 2672 and 2675(a), the claims set forth here were filed with and presented administratively to the Department of Army on May 24, 2017. On August 28, 2017, the United States of America finally denied, in writing and by certified mail, return receipt requested, the claims of the Lee family. This lawsuit was filed within six (6) months of the final denial of Plaintiff's claims.

4.2.	Accordingly, Plaintiffs have complied with all jurisdictional prerequisites and conditions precedent to the commencement and prosecution of this suit.

## FACTS

5.1.	This is a Federal Tort Claims Action for monetary damages sustained by Plaintiffs arising out of the personal injuries to DUCKHEE and JUNGSOON LEE as a result of the negligent operation of a vehicle by Sgt. Andrew Mellick.

5.2.	On the evening of October 6, 2016, a vehicle fire at the 453-mile marker, on eastbound Interstate 10 had blocked and backed up traffic for at least two hours.  The sky was cloudy. The weather and roadway was dry and without rain. Texas Troopers were present on the scene, directing traffic.

5.3. Sgt. Andrew Mellick was driving east on IH-10 towards Junction, Texas in a silver 2012 Chevrolet Silverado. He was dressed in a military uniform and under orders to return to Fort Sam Houston, Texas. Sgt. Mellick fell asleep at the wheel and crashed into the line of cars backed up at mile marker 450. The section of IH10 where the crash occurred is straight and vision was not impeded by hills, trees, or other natural features.

5.4. Upon information and belief, Sgt. Mellick was previously in Fort Huachuca, AZ completing training for the military. He was on Temporary Duty Status with specifically authorized travel to Texas in his personally-owned vehicle. Sgt. Mellick was tired after a long drive late in the evening, driving to fulfill orders from his superiors employed by the United States. The United States of America, by and through its employees or agents, instructed—either expressly or impliedly— Sgt. Mellick to take the most direct route and provided him a limited amount of time to do so.

5.5. Sgt. Mellick crashed directly into a white Toyota Scion, with Duckhee Lee in the driver's seat. Jungsoon Lee was a passenger. Duckhee and Jungsoon were wearing their seatbelts. Sgt. Mellick was traveling over 85 miles per hour in an 80 mile per hour stretch of highway when he crashed into the Lee's car. There were no skid marks left by Sgt. Mellick's truck, indicating that he did not apply his brakes.

5.6. Sgt. Mellick did not exercise reasonable care when he rear-ended the Lee car. He failed to exercise reasonable care when he fell asleep at the wheel. And he failed to exercise reasonable care when he exceeded posted speed limits.

Pursuant to Texas Transportation Code § 545.353(a)(1) and § 545.353(h-1) exceeding the posted speed limit of 80 miles per hour on IH10 is prima facie evidence that such speed is not reasonable and prudent and is unlawful. Sgt. Mellick failed to obey Texas Transportation Code § 545.351(c)(5) when he failed to reduce speed and stop at the row of cars stopped as a result of a pre-existing road hazard.

5.7. Failure to keep a proper lookout, falling asleep at the wheel, speeding, or a combination of this conduct caused Sgt. Mellick to rear-end the Lee car. Sgt. Mellick had crashed into the Lee's car with so much force, the Lee car was forced into a Ford F250 pickup truck, which in turn crashed into a silver Chevrolet Dually pickup truck. All cars and trucks—other than Sgt. Mellick's—were stopped and waiting for the fire to clear.

5.8. The Lee car was totaled. All windows were broken and demolished. There was extensive damage to all panels. The frame was demolished. There was roof damage from roll over effects. Air-flight was contacted and Mr. Duckhee Lee was in critical condition. Mrs. Jungsoon Lee was still trapped in the vehicle. Officers on the scene suspected that she was dead. Volunteer firefighters on the scene had to extract Mrs. Lee from the wreckage. Soon after, Air-flight arrived and transported Mr. Lee to Shannon Hospital. Mrs. Lee was extracted from the vehicle and pronounced dead at 12:20 am.

5.9. Sgt. Mellick woke up, exited his vehicle and asked witnesses "Did I do this?" Sgt. Mellick told two witnesses he remembered waking up and hitting the brakes after the wreck. Trooper Whitney Gardner over heard him tell

6

witnesses that he fell asleep at wheel. After the crash, Trooper Gardner approached Sgt. Mellick to ask him questions about the crash, but Sgt. Mellick said he wanted his lawyer and refused to answer any questions. Afterwards, Sgt. Mellick made a phone call. Soon after the call, an unknown United States Army employee in uniform arrived and talked to Sgt. Mellick. The two men waited and talked together until Sgt. Mellick's wife arrived to pick him up and drove him away from the scene.

    5.10.    Texas troopers issued Sgt. Mellick a citation for failure to control speed. At the time of the crash, and at all times on October 6, 2016, Sgt. Mellick was subject to the military law and the Uniform Code of Military Justice. Initially, local and state authorities investigated pursuing vehicular manslaughter charges against Sgt. Mellick. Soon after, however, the United States military assumed full responsibility of the investigation and pursued criminal charges. The United States is currently conducting a criminal investigation court-martial of Sgt. Mellick arising out of this car wreck.

## COURSE & SCOPE

    6.1.    The United States, through its agency, the Department of the Army, employs Sgt. Mellick and employed Sgt. Mellick on October 6, 2016. Sgt. Mellick intends to pursue a 20-year career with the United States Army.

    6.2.    On October 6, 2016, Sgt. Mellick dressed in his formal dress uniform for graduation and changed into military camouflage fatigues for the drive to Texas (instead of civilian clothes).

6.3. In 2016, the Army paid and continues to pay Sgt. Mellick a salary (not hourly pay).

6.4. In 2016, Sgt. Mellick had a temporary duty (TDY) assignment in Ft. Huachuca, AZ. His permanent duty station was Ft. Sam Houston, in San Antonio, TX. The Army's purpose in sending soldiers to Arizona for this special mission was to train its employees in counterintelligence for future employment with the military.

6.5. Under the Joint Federal Travel Regulations (Vol. 1, Uniformed Service Members) travel status starts "the traveler leaves the [permanent duty station or] residence" and "ends upon return to the residence, office, [permanent duty station.]" About 1305 on May 29, 2018, Sgt. Mellick's former instructor at Fort Huachuca, Platoon Sgt. Mark A. Gennero, noted that students were "were administratively controlled to the unit, until they arrived at their next duty station."

6.6. The United States Army authorized Sgt. Mellick to travel to and back from Ft. Huachuca, Az to train Sgt. Mellick for counter intelligence purposes in 2016. His original graduation and return to his on-base housing was October 10, 2016. However, the graduation date was moved up to October 6, 2016. The justification for the change was to "eliminate unnecessary weekend TDY expenditures."

6.7. On October 6, 2016, Sgt. Mellick's goal was to further the objectives of the United States or its agencies, which included returning their soldier to Fort Sam Houston, San Antonio, Texas, where the United States Army provided Sgt.

Mellick on-base housing paid for by the Government and on Government property.

6.8.    United States rules and regulations do not allow its employees to travel by privately owned conveyance unless such travel is the least expensive mode of travel to the United States and is otherwise "advantageous to the Government."

6.9.    The United States Army authorized to use his privately-owned vehicle because it was the cheapest choice and because use of the private vehicle was certified as "advantageous to the Government." Sgt. Mellick's travel authorization worksheet requires a description of "considerations that are not part of the constructed transportation cost, but help the AO decide whether [privately owned conveyance] use is to the Government's advantage." On this form, agents or employees of the United States Army certified that Sgt. Mellick would be driving his private vehicle "for course convenience and requirements." Agents or employees of the United States Army told Sgt. Mellick that this was a "lengthy course and [he would need] to go out and conduct activities … So [privately-owned conveyance] was recommended for the course."

6.10.    The United States Army authorized reimbursement for Sgt. Mellick's return trip to Texas and, on May 16, 2016, reimbursed Sgt. Mellick $463.86 for 859 miles at 54¢ per mile.

6.11.    Per his training, Sgt. Mellick called multiple superior officers in his chain of command after the wreck that is the basis of this lawsuit. He called these officers before calling his wife and mother.

6.12.   As a result of the car wreck giving rise to this lawsuit, the United States investigated the incident and court-martialed Sgt. Mellick, for a charge of violating Article 134, of the Uniform Code of Military Justice. To convict Sgt. Mellick under Article 134, the United States had to prove that his "conduct [was] of a nature to bring discredit upon the armed forces." *See* 10 U.S.C. § 934 (Art. 134).

## CAUSES OF ACTION

7.1.   Through its employees, agents, or servants, the Defendant, United States of America, was negligent in one or more of the following respects:

7.1.1.   Negligent per se for failing to observe posted speed limits in violation of Tex. Transp. Code § 545.353(a)(1) and § 545.353(h-1);

7.1.2.   Negligent per se for failing to control the speed of the vehicle as necessary to avoid colliding with another person or vehicle in violation of Tex. Transp. Code § 545.351(b) and (c)(5);

7.1.3.   Negligent for falling asleep while driving his vehicle;

7.1.4.   Negligent for failing to slow down and drive to conditions;

7.1.5.   Negligent for failing to maintain proper and safe control of his vehicle;

7.1.6.   Negligent for failing to maintain a proper and safe speed of his vehicle;

7.1.7.   Negligent for failing to maintain a safe and proper lookout for other vehicles;

  7.1.8. Negligent for failing to stop for impeded traffic pursuant to trooper directions;

  7.2. Through its employees, agents, or servants, the Defendant, United States of America, was negligent in not training and supervising Sgt. Mellick in following proper safety regulations in traveling to and from temporary duty assignments. Under Department of Defense Instruction 6055.04 (April 20, 2009), the heads of all Defense Components "shall: (a) Establish comprehensive Component traffic safety programs to meet all requirements of Enclosure 3[; and] (b) Plan, budget for, execute, monitor, and continuously improve traffic safety programs within their Components." Enclosure 3 of Instruction 6055.05 is entitled "DoD TRAFFIC SAFETY PROGRAM REQUIREMENTS." *Id.* at 10. Under the "TRAINING AND EDUCATION" section of Enclosure 3 states that all military personnel with a driver's license are trained on driving safety at Government's expense. *Id.* at 13. Military drivers must aware and follow state and local laws that are "more stringent than this policy regarding distractions while driving." *Id.* at 17. The United States or its employees negligently trained or supervised Sgt. Mellick in discharging his safe driving duties. Sgt. Mellick never received formal training on applicable Government safety regulations about the maximum daily traveling distance, the need to reduce highway tiredness and distraction by taking breaks, or proper following distances. Sgt. Mellick was and is wholly unaware of state and federal rules and regulations on these matters. Had the Government appropriately trained Sgt. Mellick, he would not have tried to drive from Arizona to Texas in one day; he would not have fallen asleep at the wheel; and injuries to the Plaintiffs

would have been averted. Further, had the Government appropriately trained him to take more breaks while driving per Texas rules of the road and military rules and regulations, he would have fallen asleep at the wheel and crashed into the Lee vehicle. Had the Government appropriately supervised Sgt. Mellick, his supervisors would have ordered him not to travel from Arizona to Texas in one day, after taking part in graduation exercises all morning, and averted the injuries to the Plaintiffs. As a proximate result of the Government's negligence, Sgt. Mellick drove to Texas and after being awake for nearly seventeen (17) hours and driving eleven (11), caused the wreck that is the basis of this lawsuit.

  7.3. The United States Army negligently failed to train and supervise Sgt. Mellick regarding requirements for his return trip given the change in course graduation date. Because of acts or omissions of the United States Army or its agents and employees, Sgt. Mellick mistakenly believed he had to make the trip from Arizona to Texas in one day, on October 6, 2018. He was not aware he could divide his trip up into multiple days. As a proximate result of the Government's negligence, Sgt. Mellick drove to Texas, caused the wreck that is the basis of this lawsuit. Had the United States or its employees or agents appropriately trained or supervised Sgt. Mellick, he would not have attempted to make the trip in one day and Government would have averted the injuries to Plaintiffs.

  7.4. At all material times, the employees, agents, or representatives of the United States Government were negligent and caused the injuries sustained by Plaintiffs.

## DAMAGES

8.1. As a proximate result of the Defendant's negligent acts or omissions, Plaintiffs suffered injuries, which would not have occurred otherwise. Plaintiff DUCKHEE LEE pleads for all damages available under Texas state law, federal law, and equity, including:

8.1.1. Past and future pain and suffering;

8.1.2. Past and future mental anguish;

8.1.3. Past and future physical impairment and disability;

8.1.4. Past and future physical disfigurement;

8.1.5. Past and future loss of income and impairment of earning capacity;

8.1.6. Past and future reasonable charges necessary for medical care, nursing, hospital, rehabilitation services, custodial care, health care, supplies, attendant care expenses and other health services;

8.1.7. Past and future reasonable and necessary expenses incurred for substitute domestic services;

8.1.8. Past and future loss of spousal household services, care, comfort, companionship, and society;

8.1.9. Past and future reasonable value of the loss of consortium with his wife, JUNGSOON LEE; and

8.1.10. Out-of-Pocket expenses.

8.2. ADRIAN LEE, on behalf of the Estate of JUNGSOON LEE, pleads for all damages available under Texas state law, federal law, and equity, including:

8.2.1. Loss of life and wrongful death of JUNGSOON LEE;

8.2.2. Physical pain, suffering, and discomfort of JUNGSOON LEE;

8.2.3. Mental anguish of JUNGSOON LEE;

8.2.4. Medical and healthcare expenses of JUNGSOON LEE;

8.2.5. Loss of earnings and earning capacity of JUNGSOON LEE;

8.2.6. Past and future loss of household services of JUNGSOON LEE;

8.2.7. Funeral and burial expenses of JUNGSOON LEE;

8.2.8. The loss of the care, maintenance, support services, and other reasonable contributions of pecuniary value that decedent in reasonable probability would have made to wrongful death beneficiaries;

8.2.9. The pecuniary value of the life of JUNGSOON LEE; and

8.2.10. The loss of enjoyment of life of JUNGSOON LEE;

8.3. IRENE LEE and ADRIAN LEE, the children of JUNGSOON LEE and DUCKHEE LEE, pleads for all damages available under Texas state law, federal law, and equity, including:

8.3.1. Loss of consortium with their mother, DUCKHEE LEE;

8.3.2. Past and future mental anguish;

8.3.3. Out of pocket expenses;

8.4. Plaintiffs, DUCKHEE LEE, IRENE LEE and ADRIAN LEE, individually and on behalf of the state of JUNGSOON LEE, plead for all other damages, pecuniary or otherwise, arising out of law or equity, that they may be justly and equitably entitled to, in the wisdom of the Court.

**PRAYER**

Plaintiffs request that Defendant be cited in terms of law to appear and answer this Complaint; that upon final trial, the Plaintiffs have judgment against Defendant, for the amount of actual damages and for other and different amounts as they shall show by proper amendment before trial; for post-judgment interest at the applicable legal rate; for all Court costs incurred in this litigation; and for such other relief, at law and in equity, both general and special, to which Plaintiffs may show themselves entitled to and to which the Court believes them deserving.

Respectfully Submitted,

/s/ *Jamal K. Alsaffar*
JAMAL K. ALSAFFAR
jalsaffar@nationaltriallaw.com
Texas State Bar #24027193
TOM JACOB
tjacob@nationaltriallaw.com
Texas State Bar #24069981
Whitehurst, Harkness, Brees, Cheng, Alsaffar, Higginbotham, & Jacob PLLC
7500 Rialto Blvd, Bldg. Two, Ste 250
Austin, TX 78735
(512) 476-4346 (o)
(512) 467-4400 (f)

GUY CHOATE
gdchoate@webbstokessparks.com
Texas State Bar #04212410
Webb, Stokes & Sparks, L.L.P.
314 W Harris Ave
San Angelo, TX 76903-6339
(325) 718-2048 (o)

Attorneys for the Plaintiff